Opinion of
the Court.
ON the first of March 1815, Wright executed two notes, binding himself to pay Stout, on the first of September thereafter, $2,183 84 cents; and, to secure the payment thereof, executed deeds of trust on several tracts of land, the property of Wright. To be relieved from those notes, deeds of trust, and compel a cancelment of them, Wright exhibited his bill in equity against Stout and the trustee. The bill alleges, that Wright, since the first day of January 1813, had been in the *482 habit of borrowing money from Stout, at the unlawful and usurious interest of 33 1-3 per centum per annum; that on the first of March 1815, Wright and Stout came to a settlement of their various transactions. After allowing Stout thirty-three and one-third per centum per annum, for all moneys which he had advanced to Wright, and Wright receiving a credit for what he had paid, there remained a balance in favor of Stout, of $1,985 30 cents; that there was added to this sum, interest at the rate of twenty per centum per annum, from the first of March to the first of September, making the aggregate amount of $2,183 84 cents, for which the notes of that date were executed, and to secure which, the deeds of trust were given. The bill further alleges, that Wright, on the first of January 1816, paid Stout, by the hands of William Smith, $500; that Wright has since paid $500, and on the 2d day of April 1818, he paid, by James Owens, $1,000, making in the whole $2,000 paid on account of the notes executed on the first of March 1815. The bill puts various interrogatories to Stout, and calls upon him for an answer; insists that the notes and deeds of trust were executed to secure the payment of money usuriously loaned by Stout, and prays that they may be delivered up and cancelled, &c.
Where the answer contains only a general denial of the usury, less evidence will be required to establish it than if the denial was a direct & conclusive negation.
Usury held to be established in such a case, without any direct, positive proof of it.
Wright subsequently filed an amendment to his bill, alleging that in pursuance to the corrupt and usurious agreement stated in his original bill, he placed in the possession of Stout a negro boy, to work for the interest of $400 of the usurious interest reserved and secured to Stout as charged in the original bill, and that the boy has continued ever since to labor for Stout, who refuses to allow anything for his services, or to return the boy to Wright. The amended bill asks for an account to be taken for the service of the boy, and prays that Stout may be compelled to surrender the boy, and accept of his principal debt without interest, and for general relief, &c.
Stout, in his answer, admits that Wright borrowed of him, before the first of March 1815, at different times, various small sums of money; but without any stipulation whatever for interest, and that he is unable to say what interest was charged, in settling and paying these small loans; but verily believes, that, taken together, the interest did not equal six per centum per annum. *483 The answer further states, that being applied to by Wright for that purpose, Stout agreed to take up, and actually did take up notes of Wright’s to other persons, the precise amount of which Stout has no means of ascertaining; but, to the best of his recollection, he thinks it was about $2,000; and that the notes and deeds of trust mentioned in the bill, were given to secure that sum, together with $68 66 cents, the balance of a book account, and several small due-bills held by Stout on Wright for about $100, amounting in the whole, including legal interest on the due-bills from the time, they were payable, and legal interest on the other sums until the first of September, to $2,183 84 cents; but the answer states that Stout cannot admit, nor does he believe, more than six per centum per annum was reserved or included in the notes. The answer admits, that after the notes became payable, Wright gave Stout reason to believe that he would pay higher interest than six per centum per annum; but denies that any stipulation was made on that subject, at the negotiating and signing the notes. He denies that the negro boy was put into the possession of Stout for the purpose, mentioned in the bill; but alleges that Stout purchased him from Wright, at the price of $400, which has been credited on the notes. The answer exhibits an account, which is alleged to contain all the payments made by Wright, or others for him; and from that it appears there remains due from Wright, for principal and interest, after crediting the price of the negro boy and the several payments admitted to have been made, $44 6 cents, which, it is insisted, Stout is still entitled to; and on the payment, he suggests a willingness to surrender up the notes and deeds of trust, &c.
The circuit court, being of opinion that the notes and deeds of trust were given on an usurious consideration, and that all the principal but five dollars, had been paid by Wright, and that the negro had not been sold by Wright to Stout, decreed that the notes should he cancelled, and deeds of release given by Stout for the property mentioned in the deeds of trust, and that the negro boy should be restored by Stout, and that he should pay $34, the residue of the amount assessed by a jury for the hire of the boy, after deducting the $5 not paid of the principal, and that Stout should pay costs. From that decree Stout has appealed to this court.
*484 In revising the decree of the circuit court, two questions present themselves as proper to be noticed: 1st, As to the usurious interest alleged to have been reserved in the notes ; and 2dly, whether or not the negro boy was in fact purchased by Stout at the price alleged by him.
If the boy were not purchased, and the notes are shown to have been given to secure the payment of money usuriously loaned, the decree of the court below must be affirmed. For if it be true that the usurious interest alleged in the bill was reserved in the notes, it is perfectly obvious that all the principal sum but five dollars, for which the notes were executed, has been paid by Wright; and the law is clear, that wherever usurious interest is reserved, the lender will be compelled, in equity, to receive the principal without interest, and pay costs.
In responding to the first question, it will be conceded, that the fact of usurious interest having been reserved in the notes, is not proved by any person who was present at their execution; but, after exploring all the circumstances detailed in the record, we have but little hesitation in affirming that usurious interest was reserved. The evidence is abundant, that some time after the notes became payable, and when the parties were about to settle and adjust the accounts, Stout insisted on receiving unlawful interest; and we are informed by the witness who was called on to aid them in their settlement, that the demand for unlawful interest was made under a previous agreement acknowledged to have been made by the parties. When the agreement for unlawful interest was made, whether before or after the notes were executed, the witness has not informed us; but the fact of such an agreement having been made, followed by the demand of Stout for the payment of unlawful interest, is entitled to no slight consideration, in determining the true character of the agreement on which the notes were given. The subsequent refusal of a broker to deliver up property pawned as a security for money, unless the borrower would pay him more interest than the law allows, has been held evidence of usury, though there were no other circumstances from which any precedent agreement between the borrower and pawn-broker, for illegal interest, could be inferred. Ord on Usury, 85, Were it, *485 however, conceded, that the facts to which we have referred as being proved, are not in themselves sufficient to show the agreement on which the notes were given, usurious; yet, when connected with the further evidence of notes having been given for the loan of money, and the acknowledgment of Stout to the witness, (Henderson,) that Wright was not only to pay him unlawful interest after the notes became due, but that he had done so before, leave no reasonable doubt of usurious interest having been reserved in the agreement on which the notes were given. To these circumstances may be added, the further remark, that the answer of Stout does not contain any express denial of unlawful interest having been included in the notes. The answer sets out the demands for which the notes are alleged by Stout to have been given, and charges that more than six per centum per annum was not computed on those demands; but on what account part of those demands were created, whether for illegal interest or otherwise, the answer is altogether silent. It is not necessary to say that the answer ought to be construed into an admission of the fact of usury having been reserved in the notes, and we would not be understood as so deciding; but we would be understood to say, that less evidence ought to be admitted sufficient to establish the charge in the bill in the case, than would have been required if the answer had contained a direct denial of any usury having ever been reserved or taken by Stout.
With respect to the purchase of the boy, alleged to have been made by Stout, it need only be remarked, that we concur with the court below, in the opinion that the evidence is insufficient to prove the purchase.
Decree affirmed.